UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.: _____

GLYDE SOLAR, LLC, a Delaware
limited-liability company,

    Plaintiff,

vs.

GREEN HOUSE SOLAR AND AIR,
INC., a Florida corporation,

    Defendant.
_____/

## COMPLAINT

Plaintiff, GLYDE SOLAR, LLC ("**Glyde**"), a Delaware limited-liability company, sues Defendant, GREEN HOUSE SOLAR AND AIR, INC. ("**Green House**"), a Florida corporation, for equitable accounting, breach of contract, and account stated, and alleges as follows:

### INTRODUCTION

1. As an industry leader in affordable solar solutions for homeowners, Glyde prides itself on its no-pressure, education-oriented approach that is designed to provide its customers with a seamless experience in the transition to solar power. To achieve maximum results, Glyde joins forces with contractors, financing partners and manufacturers in the solar business to ensure that every install meets its exacting standards

and exceeds customer expectations. With customer service as a top priority, Glyde relies heavily on referrals and reviews from existing customers to expand its business.

2. On or around November 6, 2020, Glyde entered into a Sales Agreement with Green House (the "**Agreement**") whereby it agreed to procure sales of installation services in Florida and Texas on behalf of Green House. A redacted copy of the Agreement is attached as EXHIBIT A.[1] In turn, Green House agreed to pay Glyde sales commissions on the installation contracts.

3. Pursuant to the Agreement, Glyde identified potential customers in Florida, cultivated relationships with them and procured sales contracts for Green House installation services. Glyde served as the customer interface for Green House, educating customers and ensuring that they felt comfortable with the entire installation process.

4. Green House has failed to perform its part of the bargain.

5. Not only did Green House fail to pay Glyde several hundred thousand dollars in sales commissions, Green House also failed to pay Glyde for additional services included in installation contracts for which Glyde hired subcontractors on behalf of Green House. As a result, Glyde has been unable to pay the subcontractors, with whom Glyde had developed advantageous business relationships.

6. Moreover, Green House failed to complete installations in a professional manner, intentionally ignored inquiries from customers related to pending installations, and

---

[1] The attached copy of the Agreement has been redacted to remove pricing information, which is deemed confidential under the terms of the Agreement.

prevented Glyde from accessing installation information for customers, all of which have damaged Glyde's reputation and good will with existing and prospective customers.

7. In this action Glyde seeks to recover (a) the unpaid balance of several hundred thousand dollars in commissions earned by Glyde for sales made pursuant to the Agreement; (b) payments due to the subcontractors hired to perform additional services in connection with sales made pursuant to the Agreement; and (c) damages for the loss of goodwill resulting from Green House's failure to perform under the sales agreements procured by Glyde.

## **PARTIES, JURISDICTION & VENUE**

8. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1332(a)(1) because the total matter in controversy, exclusive of interest and costs, exceeds the jurisdictional threshold of $75,000.00 and is between citizens of different states.

9. Glyde is a Delaware limited-liability company with members residing in Utah and Arizona. None of Glyde's members reside in Florida.

10. Green House is a Florida corporation with its principal place of business in Clearwater, Florida.

11. Venue is appropriate in this District pursuant to 28 U.S.C. §1391, since Green House resides in this District and is subject to the Court's personal jurisdiction.

12. All conditions precedent to the maintenance of this action have been met, waived, or otherwise excused.

## FACTUAL BACKGROUND

13. Green House is a Florida licensed electrical and solar contractor, which is defined as:

> …a contractor whose services consist of the installation, alteration, repair, maintenance, relocation, or replacement of solar panels for potable solar water heating systems, swimming pool solar heating systems, and photovoltaic systems and any appurtenances, apparatus, or equipment used in connection therewith, whether public, private, or otherwise, regardless of use.

FLA. STAT. §489.105(3)(o).

14. On or about November 6, 2020, Glyde and Green House entered into the Agreement and created a non-exclusive business relationship wherein Glyde sold solar panel installation services on behalf of Green House. *See* Agreement at §I.

15. Glyde identified, contacted, and solicited potential customers for Green House's solar installation services in Florida and Texas. Glyde served as the primary client contact for Green House's solar installation contracts.

16. Glyde cultivated the customer relationships, educating customers, answering questions, and addressing concerns about solar power and the installation process. Glyde met with potential customers, gathered their energy consumption information and needs, and developed project quotes, using the forms and software provided and approved by Green House. *See* Agreement at §II. The project quotes detailed the appropriate number of solar panels to be installed for a customer's specific energy needs based on the parameters and software provided by Green House. *Id*.

17. In some instances, project quotes included additional services, such as roof repair or replacement, tree removal, and other services required to facilitate the solar panel installation. Glyde contacted, hired, and coordinated with subcontractors to provide such additional services. The cost of the subcontractor's services was included within the Green House installation contracts.

18. Once a customer was satisfied with the project quote, Glyde prepared and submitted all final installation contract documentation to Green House, including company order forms and invoices, within 24 hours of finalizing a sale. *See id*. The installation documentation was provided and approved by Green House.

19. Thereafter, Green House representatives met with customers, arranged for financing (if necessary), and answered any final questions regarding the installation services.

20. Under the Agreement, Green House agreed to pay Glyde a commission for each sale equal to the difference between the final contract price and the red-line Dealer Pricing, which was provided in Exhibit A of the Agreement. *See* Agreement at §III and Ex. A.

21. On February 1, 2021, Green House agreed to reduced red-line pricing, which would increase Glyde's potential commission, in exchange for Glyde providing Green House "first look on all jobs throughout Florida." Green House prepared the reduced red-line pricing agreement, a redacted copy of which is attached as EXHIBIT B.[2]

---

[2] The attached copy of the reduced red-line pricing agreement has been redacted to remove pricing information, which is deemed confidential under the terms of the Agreement.

22. On several occasions, including in April 2021, Glyde and Green House representatives met and discussed the status of pending installation contracts and performance under the Agreement. At no point during these discussions did Green House question how Glyde was communicating with customers or conducting sales under the Agreement. Nor did Green House mention any refunds or cost accommodations related to any contract sold by Glyde.

23. Additionally, during these meetings, Glyde advised Green House that for certain types of installation contracts in which Green House acknowledged it was not interested, Glyde would work with other licensed solar contractors. Green House did not object to and agreed to this non-exclusive arrangement, which was consistent with the Agreement.

24. Glyde used company-provided and approved documentation and tools for recording, submitting, and tracking sales, including customer-relationship management software and other systems deemed necessary by Green House. Access to these resources was provided to Glyde by Green House. *See* Agreement at §II.

25. Commission payments were due under the Agreement after the contracted project was fully funded by the bank and/or the customer's payment cleared in full. Payment was to be made by Green House via payroll services and automatically deposited the following payroll period. *See* Agreement at §III.

26. To track the progress of installment contracts through financing, payment and installation, Glyde used the computer systems to which Green House provided Glyde access.

27. Glyde directly billed Green House for its commissions on a weekly basis (every Friday) using the electronic system and software provided by Green House.

28. Green House also paid Glyde its commissions on a weekly basis (on Wednesdays).

29. On each contract, Glyde generally earned commissions ranging from $10,000.00 to $20,000.00, depending on the equipment and services included in the specific contract.

30. The last payment that Green House made to Glyde for commissions under the Agreement was on October 6, 2021.

31. On or about October 20, 2021, after not making commission payments for two weeks, Green House purported to terminate the Agreement based on novel and false accusations that Glyde had supposedly breached the Agreement.

32. At the time that Green House terminated the Agreement, Green House owed Glyde commissions on 20 or more installation contracts, with a value of several hundred thousand dollars.

33. Green House also owed Glyde the payments due to subcontractors who provided additional services on several Green House installation contracts.

34. Following termination of the Agreement, Green House denied Glyde access to the electronic system used for tracking sales under the Agreement. As a result, Glyde cannot confirm the total number of sales and/or amount of commissions than remain outstanding under the Agreement.

35. Green House has refused to pay any of the outstanding commissions or provide Glyde with an accounting for the amounts due under the Agreement.

36. Without the commissions owed by Green House, Glyde has been unable to compensate its sales representatives for the Green House sales that they completed prior to Green House's termination of the Agreement.

37. Green House has also refused to pay Glyde for the subcontractor services performed on several installation contracts. As a result, these subcontractors also have not been paid and will likely start securing mechanic's liens on the customers' properties on which they provided services.

38. Moreover, Glyde has received complaints about installations that Green House has improperly performed or failed to perform. Other customers have been contacting Glyde to determine the status of their solar installations; however, without access to any information, Glyde has not been able to service these customers. Although Glyde has referred these customers to Green House, many have complained that Green House does not answer or return their calls. As a result, Glyde's goodwill and reputation, which are the foundation of its business, have suffered greatly.

39. Glyde engaged undersigned counsel and is obligated to pay them a reasonable fee to pursue this matter.

40. The Agreement provides:

> In the event of any litigation arising from or related to this agreement, or the services provided under this agreement, the prevailing party shall be entitled to recover from the non-prevailing party all reasonable costs incurred, including staff

time, court costs, attorney's fees, and all other related expenses incurred in such litigation.

## COUNT I
## ACCOUNTING

41. Glyde realleges and incorporates Paragraphs 1 through 40 of this Complaint as if fully set forth here.

42. The Agreement between Glyde and Green House created a business relationship that included extensive and complicated sales transactions from which Glyde was entitled to receive commissions.

43. Glyde was also to receive payments for the subcontractors that it hired on behalf of Green House to perform additional services related to various installation contracts pursuant to the Agreement.

44. The transactions and payments under the Agreement are such for which an accounting is warranted.

45. Green House is in sole possession of the records that demonstrate the commissions that it owes Glyde under the Agreement, which Glyde estimates to be well over $75,000.00.

46. Green House is in sole possession of the records that demonstrate the amounts owed to subcontractors that Glyde hired on Green House's behalf to perform additional services under various installation contracts pursuant to the Agreement.

47. Glyde does not have an adequate remedy at law because absent an accounting, it is unable to determine the full extent of its damages stemming from Green House's breaches of the Agreement.

48. The Agreement entitles Glyde to recover its attorneys' fees and costs from Green House.

**WHEREFORE,** Glyde prays for judgment to be entered in its favor and against Green House, awarding the following:

a. A complete and full accounting of all commissions due to Glyde pursuant to the Agreement;

b. A complete and full accounting of all amounts owed to subcontractors hired by Glyde on behalf of Green House;

c. Costs, expenses, and attorneys' fees pursuant to the Agreement; and

d. Such other relief as the Court deems just and equitable.

## COUNT II
## BREACH OF CONTRACT

49. Glyde realleges and incorporates Paragraphs 1 through 40 of this Complaint as if fully set forth here.

50. The Agreement is a valid and enforceable contract between Glyde and Green House.

51. Glyde performed all of its obligations under the Agreement.

52. Green House breached the Agreement by:

a. failing to pay Glyde the commissions due under the Agreement;

b. failing to pay Glyde the amounts due to subcontractors that it hired on behalf of Green House to perform additional services pursuant to various installation contracts;

    c.    failing to account to Glyde for all commissions due under the Agreement;

    d.    failing to account to Glyde for all the amounts due to subcontractors hired to perform additional services pursuant to various installation contracts; and

    e.    failing to complete installations and communicate with customers in a professional manner to the detriment of Glyde's reputation and goodwill.

53. As a direct and proximate result of Green House's breaches of the Agreement, Glyde has suffered damages in excess of $75,000.00.

54. The Agreement entitles Glyde to recover its attorneys' fees and costs from Green House.

**WHEREFORE,** Glyde prays for judgment to be entered in its favor and against Green House, awarding the following:

    a.    Compensatory damages in excess of $75,000.00;

    b.    Pre and Post Judgment Interest as provided by Florida law;

    c.    Costs, expenses, and attorneys' fees pursuant to the Agreement; and

    d.    Such other relief as the Court deems just and equitable.

## COUNT III
## **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

55. Glyde realleges and incorporates Paragraphs 1 through 40 of this Complaint as if fully set forth here.

56. This Count is pled in the alternative to Count II.

57. The Agreement is a valid and enforceable written contract between Glyde and Green House, which includes implied covenants of good faith and fair dealing.

58. Green House has deliberately and consciously failed to and refused to (a) account for and pay Glyde its commissions under the Agreement in a fair and reasonable manner; (b) account for and pay Glyde for the amounts owed to subcontractors who performed additional services on several installation contracts in a fair and reasonable manner; and (c) complete installations and communicate with customers in a professional manner, all of which unfairly and unreasonably frustrates the purpose of the Agreement and Glyde's reasonable expectations thereunder.

59. Green House has breached the implied covenants of good faith and fair dealing and has deprived Glyde of the benefits of the Agreement.

60. As a direct and proximate result of Green House's breaches of the implied covenants of good faith and fair dealing, Glyde has suffered damages in excess of $75,0000.00.

61. The Agreement entitles Glyde to recover its attorneys' fees and costs from Green House.

**WHEREFORE,** Glyde prays for judgment to be entered in its favor and against Green House, awarding the following:

    a.    Compensatory damages in excess of $75,000.00;

    b.    Pre and Post Judgment Interest as provided by Florida law;

    c.    Costs, expenses, and attorneys' fees pursuant to the Agreement; and

    d.    Such other relief as the Court deems just and equitable.

## COUNT IV
## UNJUST ENRICHMENT

62. Glyde realleges and incorporates Paragraphs 1 through 40 of this Complaint as if fully set forth here.

63. This Count is pled in the alternative to Counts II and III.

64. Glyde has conferred a benefit to Green House in the form of several sales of solar panel installation contracts.

65. Glyde has conferred a benefit to Green House in the form of subcontractor additional services in connection with various installation contracts.

66. Green House has knowledge of the benefits conferred by Glyde.

67. Green House voluntarily accepted and retained the benefits conferred by Glyde. Green House continues to accept and retain the benefits as it proceeds with various installation contracts that were procured by Glyde.

68. Glyde estimates that these benefits are valued well over $75,000.00.

69. The circumstances render Green House's retention of these benefits inequitable unless Green House pays to Glyde the value of the benefits conferred.

**WHEREFORE,** Glyde prays for judgment to be entered in its favor and against Green House, awarding the following:

a. Compensatory damages in excess of $75,000.00;

b. Pre and Post Judgment Interest as provided by Florida law; and

c. Such other relief as the Court deems just and equitable.

## **DEMAND FOR TRIAL BY JURY**

Glyde demands trial by jury of all issues so triable.

Dated:  November 19, 2021.

                        Respectfully submitted,

WOLFE | PINCAVAGE
*Counsel for Plaintiff*
7800 SW 57th Avenue
Suite 217
South Miami, FL 33143
Office: 786.409.0800

*/s/ Liana De La Noval*
Cristina B. Rodriguez, Esq.
Florida Bar No. 639982
cristina.rodriguez@wolfepincavage.com
Liana De La Noval, Esq.
Fla. Bar No.: 95944
liana.delanoval@wolfepincavage.com